## VALLEY FARMS COMPANY OF YONKERS *v.* COUNTY OF WESTCHESTER.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 136.   Argued January 24, 1923.—Decided February 19, 1923.

1. A state legislature may without notice to property owners establish a sewer district and direct that the cost of the sewer be assessed upon the real property within the district in proportion to its value as ascertained for purposes of general taxation.   P. 162.
2. It is not a valid objection to such an assessment, under the Fourteenth Amendment, that the property assessed can receive no direct benefit, where it ultimately may be benefited by future extensions of the sewer.   P. 163.
3. Nor is it of importance from the constitutional standpoint that the sewer had been completed before the boundaries of the district were established.   P. 164.
4. Where the state law gives the property owner an opportunity to be heard upon the valuation of his property for general taxation, he is not entitled under the Amendment to a further hearing on that subject when such valuations are used as bases for apportioning special assessments. . P. 164.

193 App. Div. 433; 231 N. Y. 558, affirmed.

ERROR to a judgment of the Supreme Court of New York, Appellate Division, entered on mandate of affirmance from the Court of Appeals, and directing dismissal of the complaint in an action brought by the present plaintiff in error to declare void a special tax assessment and to restrain its collection.

*Mr. Robert C. Beatty* for plaintiff in error.

Plaintiff in error has a constitutional right to notice and hearing as to the apportionment of the assessments

upon its property; and the act in fixing those burdens by general rule without notice and hearing and without regard to special benefit is unconstitutional. *Turner v. Wade,* 254 U. S. 64; *Central of Georgia Ry. Co. v. Wright,* 207 U. S. 127; *Spencer v. Merchant,* 100 N. Y. 585; affd. 125 U. S. 345; *Matter of Trustees of Union College,* 129 N. Y. 308; *French v. Barber Asphalt Paving Co.,* 181 U. S. 324; *Hancock v. Muskogee,* 250 U. S. 454.

The act is unconstitutional in that it deprives the plaintiff in error of its property without just compensation and without due process of law, because it assesses such property equally with all other property within the assessment area for the whole cost of the sanitary outlet sewer and the whole cost of the sanitary trunk sewer, whereas the property of the plaintiff in error can make no use whatever of such sanitary trunk sewer, eleven and three-quarters miles in length, and only a partial use of about one-half of the length of the sanitary outlet sewer, about three miles in length. Such partial use even as to most of its property can only begin upon the construction of a trunk sewer about four miles in length and costing over $300,000. *Gast Realty & Investment Co. v. Schneider Granite Co.,* 240 U. S. 55; *Kansas City Southern Ry. Co. v. Road Improvement District No. 6,* 256 U. S. 658; *Thomas v. Kansas City Southern Ry. Co.,* 277 Fed. 708; *Myles Salt Co. v. Iberia Drainage District,* 239 U. S. 478. *Hancock v. Muskogee,* 250 U. S. 454; and *Miller & Lux v. Sacramento Drainage District,* 256 U. S. 129, distinguished.

In each of the cases principally relied upon by the defendant in error, the Court has carefully pointed out, in holding the particular act or ordinance constitutional, that if an act works an arbitrary injustice to a complaining property owner by imposing upon his property an unjust and unequal assessment wholly disproportioned to the benefits conferred, it is unconstitutional. See also

*Clark* v. *Dunkirk,* 12 Hun, 181; 75 N. Y. 612; *O'Reilly* v. *Common Council,* 53 App. Div. 58; *Matter of City of New York,* 218 N. Y. 234; *Keim* v. *Desmond,* 186 N. Y. 232; *Providence Retreat* v. *Buffalo,* 29 App. Div. 160; *Kellogg* v. *Elizabeth,* 40 N. J. L. 274; *In re West Marginal Way,* 192 Pac. 961; *Morris* v. *Bayonne,* 53 N. J. L. 299; *Witman* v. *Reading City,* 169 Pa. St. 375; *Barton* v. *Kansas City,* 110 Mo. App. 31.

The assessments are wholly disproportioned to benefits in that they are based solely upon the assessments for general taxation, which results in the arbitrary adoption of the value of the lots as they may happen to be laid out upon the tax maps without regard to frontage or depth, or the distance from the sewer of large tracts assessed as one lot. *Gast Realty Case, supra; Howell* v. *Tacoma,* 3 Wash. 711.

The assessments are wholly disproportioned to benefits in that the assessments upon improved property are based on the assessed value of lands and buildings, while those on vacant property are based on the assessed value of the land. *Boston* v. *Shaw,* 1 Metc. 130; *Howell* v. *Tacoma, supra.* Sewer taxes assessed upon the value of lots without the improvements upon them have been held valid. *Snow* v. *Fitchburg,* 136 Mass. 183; *Gilmore* v. *Hentig,* 33 Kans. 156; *Douglass* v. *Craig,* 4 Kans. App. 99; Dillon, Municipal Corporations, 5th ed., § 1463, and notes.

The act as amended requires the supervisors of the County of Westchester to adopt a budget for the Bronx Valley sanitary sewer district and to determine the aggregate amount to be collected by the assessments for each year; such amount to include unconstitutional and unlawful items such as a contingent fund to meet deficiencies of revenue and the cost of all litigation now or hereafter incurred. *DeWitt* v. *Rutherford,* 57 N. J. L. 619; *West Third Street Sewer Appeal,* 187 Pa. St. 565;

*Erie* v. *Russell,* 148 Pa. St. 384; *Hammett* v. *Philadelphia,* 65 Pa. St. 146.

The Act of 1905 as amended up to the year 1917 provided for the fixing of the area for assessments by the commissioners appointed under such act and such area was fixed with opportunity to the property owners to be heard after notice to them. The work was entirely completed in 1913. Notwithstanding the fixing of the rights and liabilities of all property owners, the Legislature in 1917 swept away these rights and attempted to substitute a different assessment area described by metes and bounds. In so providing the constitutional rights of the property owners were disregarded.

A law much simpler and clearer in its provisions was characterized as " a farrago of irrational irregularities " by Mr. Justice Holmes in *Gast Realty & Investment Co.* v. *Schneider Granite Co., supra.*

The case of *Horton* v. *Andrus,* 191 N. Y. 231, in which certain constitutional questions were raised in reference to the original act, c. 646, Laws of 1905, did not determine the issues raised in this case which relate to the provisions of the amendments to the act.

The relief prayed for is properly granted in this form of action.

*Mr. William A. Davidson,* with whom *Mr. Charles M. Carter* was on the brief, for defendant in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Plaintiff in error, a New York corporation, seeks cancellation of an assessment of taxes upon its real property to pay for construction and operation of the Bronx Valley sewer. Westchester County, a necessary party under the local statute, demurred to the complaint upon the ground that it states no cause of action. The trial court over-

ruled the demurrer. The Appellate Division reversed the judgment—193 App. Div. 433—and the Court of Appeals affirmed this action, without opinion—231 N. Y. 558.

The complaint alleges—

Plaintiff in error owns certain designated lands in Westchester County assessed for taxes for the year 1918 for the benefit of the Bronx Valley sewer.

That under c. 646, New York Laws of 1905, entitled "An Act to provide for the construction and maintenance of a sanitary trunk sewer and sanitary outlet sewer in the county of Westchester, and to provide means for the payment therefor," and sundry amendments thereto, especially c. 646, Laws of 1917, the Legislature attempted to designate the area benefited by the trunk and outlet sewers and to provide for taxing all property therein. The trunk sewer is 11¾ miles long, the outlet sewer 3 miles. Both are wholly within Westchester County. The former lies along the Bronx River. At a point near the south line of the county it connects with the outlet sewer· which extends thence westwardly under two high ridges and across Tibbetts Valley to the Hudson River.

That the sewer system carries house drainage only—no surface water; and throughout its entire course the grade is downward; the sewage flows by gravity; there are no pumping stations.

That east of and near Hudson River a high ridge runs north and south. Immediately east of this lies Tibbetts Valley; further east there is a second north and south ridge; then comes Bronx Valley shut in on the east by a third ridge. The natural drainage of Bronx Valley is southerly into East River; Tibbetts Valley also drains southerly, but into Harlem River. No natural drainage connection exists between the two valleys; they are separated throughout their entire length by the second ridge.

That the outlet sewer, through which the whole system discharges, extends from the trunk sewer in Bronx Valley

under the second ridge at great depth below the surface, thence across Tibbetts Valley and under the first ridge also at great depth to the Hudson River. Any connection with this sewer from Tibbetts Valley must be made therein; and lands there cannot be connected at all with the trunk sewer.

That about 2500 acres—Lincoln Park section—of Tibbetts Valley is now connected with the outlet sewer; no other lands therein can use it unless and until a connecting line, four miles long, is constructed, at a probable cost of $300,000.

That notwithstanding this limited possible use Tibbetts Valley is assessed to meet the cost of the entire system just as the lands in Bronx Valley. Taxes for construction and maintenance are based wholly upon assessed valuations for general purposes. Each lot is taxed according to value and irrespective of benefits received. No power is conferred to reduce assessments in one section not benefited equally with others.

That the district was defined by the amendment of 1917, twelve years after the original act and five years after completion of the sewers. The first act limited the total cost to $2,000,000 and provided that commissioners should determine the benefited area after opportunity for hearings. Amendments have changed these fundamental provisions—the total cost exceeds $3,250,000, and the boundaries have been designated without notice to owners.

That the challenged assessments are upon valuations of both land and improvements and disproportionate to benefits. The Board of Supervisors is required to adopt a budget, which includes unconstitutional and unlawful items—among them cost of litigation and contingent fund for deficiencies.

That the act as amended prohibits assessments against lands within the sewer district when also in Mount Vernon, but directs that a corresponding sum shall be

paid by levy upon all property, real and personal, within that City.

That plaintiff's lands have been illegally assessed. The act as amended violates the Fourteenth Amendment by depriving plaintiff of property without due process of law and without just compensation and by denying it equal protection of the laws. The assessments are a cloud upon plaintiff's title and greatly depreciate market values. There is no adequate remedy at law.

The prayer is for a decree declaring the assessments void, directing their cancellation and restraining collection; and for general relief.

Counsel for plaintiff in error states that " the question here involved is whether the statutes of the State of New York, under which the Bronx Valley sewer assessments were imposed over a large area of many square miles, in Westchester County, New York, are in contravention of due process of law under the Fourteenth Amendment of the Constitution of the United States."

The argument proceeds thus—

The sewer system, intended for house drainage only, consists of a trunk sewer 11¾ miles long, in the Bronx Valley, connected with an outlet sewer extending westward three miles to the Hudson River. The Act of 1905—c. 646—provided that commissioners should prepare a map of the assessment district after notice to owners and opportunity to be heard. The supplemental Act of 1917—c. 646—disregards this map, substitutes definite boundaries and directs assessments upon all lands therein according to value, including improvements—all parcels to be treated alike.

That such assessments disregard the difference in conditions, locations and benefits and no notice or opportunity for hearing concerning the apportionments to particular parcels is provided for.

50947°—23——11

· That plaintiff's Tibbetts Valley lands are so situated that they can never utilize any part of the sewer system except the lower portion of the outlet sewer, and this will be possible only through costly connections not yet planned.

That the statutes are unconstitutional, in that—they provide for no notice or hearing upon apportionment of the assessments; they direct assessments of all parcels of land according to values fixed for general taxation purposes irrespective of relation to the sewer, street frontage, depth or shape; they include improvements in assessed values and thereby adjoining lots of equal size are taxed for different sums. And they are " ' of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred,' so that such legislative action is ' palpably arbitrary or a plain abuse.' "

*Myles Salt Co.* v. *Iberia Drainage District,* 239 U. S. 478; *Gast Realty & Investment Co.* v. *Schneider Granite Co.,* 240 U. S. 55; and *Kansas City Southern Ry. Co.* v. *Road Improvement District No. 6,* 256 U. S. 658, are cited and relied upon; but, we think it clearly appears upon examination of those cases in connection with *Wagner* v. *Baltimore,* 239 U. S. 207, 217, 218; *Houck* v. *Little River Drainage District,* 239 U. S. 254, 262, 265; and *Miller & Lux* v. *Sacramento Drainage District,* 256 U. S. 129, that the allegations of the complaint are insufficient to bring this cause within the doctrine which plaintiff invokes.

The courts below have upheld the assessment under the constitution and laws of the State. We are concerned only with application of the Fourteenth Amendment.

In *Houck* v. *Little River Drainage District,* the owners of a large area sought to enjoin collection of a tax of twenty-five cents per acre levied generally upon lands in

the district to pay preliminary expenses. They alleged that the lands varied greatly in value and that no benefits would accrue to theirs—some of which would be condemned and others damaged. The judgment of the state courts sustaining a demurrer to the petition was affirmed here. Speaking through Mr. Justice Hughes, this Court declared—

" In view of the nature of this enterprise it is obvious that, so far as the Federal Constitution is concerned, the State might have defrayed the entire expense out of state funds raised by general taxation or it could have apportioned the burden among the counties in which the lands were situated and the improvements were to be made. *County of Mobile* v. *Kimball,* 102 U. S. 691, 703, 704. It was equally within the power of the State to create tax districts to meet the authorized outlays. . . . And with respect to districts thus formed, whether by the legislature directly or in an appropriate proceeding under its authority, the legislature may itself fix the basis of taxation or assessment, that is, it may define the apportionment of the burden, and its action cannot be assailed under the Fourteenth Amendment unless it is palpably arbitrary and a plain abuse. . . .

" When local improvements may be deemed to result in special benefits, a further classification may be made and special assessments imposed accordingly, but even in such case there is no requirement of the Federal Constitution that for every payment there must be an equal benefit. The State in its discretion may lay such assessments in proportion to position, frontage, area, market value, or to benefits estimated by commissioners."

In *Miller & Lux* v. *Sacramento Drainage District, supra,* we said—" Since *Houck* v. *Little River Drainage District* (1915), 239 U. S. 254, the doctrine has been definitely settled that in the absence of flagrant abuse or purely arbitrary action a State may establish drainage dis-

tricts and tax lands therein for local improvements, and that none of such lands may escape liability solely because they will not receive direct benefits."

*Myles Salt Co.* v. *Iberia Drainage District, Gast Realty & Investment Co.* v. *Schneider Granite Co.,* and *Kansas City Southern Ry. Co.* v. *Road Improvement District No. 6, supra,* present facts deemed sufficient to show action " palpably arbitrary and a plain abuse " of power. Here the allegations make out no such situation. All lands within the district ultimately may be connected with some portion of the sewer and we cannot say they derive no benefits therefrom or that any were included arbitrarily. or for improper purposes.

It was unnecessary for the Legislature to give notice and grant hearings to owners before fixing the boundaries of the district so as to include their lands, and prescribing the method of taxation. And it is unimportant that the sewer had been completed before the boundaries of the present district were established. *Wagner* v. *Baltimore, supra.*

The state courts held that as the rolls of local assessors are adopted for taxing property within the district the right of owners to be heard as to values is adequately protected; and we think that under the circumstances they can demand no more.

The judgment of the court below is

*Affirmed.*