**SMITH et al. v. WILSON et al.**

(District Court, S. D. Texas, at Houston. July 3, 1926.)

No. 272.

1. **Navigable waters** ⊂⊃12—**Ad valorem tax levied on property in harbor district held not invalid because benefits are not equal.**

An ad valorem tax levied on all property in a district, created under state authority, to pay for harbor improvement, is not invalid because, of necessity, all property in the district will not receive the same benefit.

2. **Constitutional law** ⊂⊃290(3)—**Navigable waters** ⊂⊃12—**Creation of harbor district under constitution and laws of Texas, and levy of ad valorem tax for harbor improvement, held not in violation of constitutional rights, though no provision was made for hearing on special benefits.** (Const. Tex. art. 16, § 59; Acts Tex. 39th Leg. [1925] c. 5 [Vernon's Ann. Civ. St. 1925, art. 8263]).

Const. Tex. art. 16, § 59, provides for the creation of conservation and reclamation districts within the state which shall be governmental agencies and bodies politic and corporate, with authority to exercise such rights, privileges, and functions as concerning the subject-matter as may be conferred by law Acts 39th Leg. (1925) c. 5 [Vernon's Ann. Civ. St. 1925], art. 8263), enacted to carry out the constitutional mandate, delegates authority to a county commissioners' court, after full hearing on petition and notice to determine by its judgment whether a proposed improvement will be of public benefit and is feasible and practicable and fix the boundaries of the district, which judgment shall be final and conclusive. The court is further authorized, if its judgment is in favor of the district, to call an election therein, and on an affirmative vote to issue bonds to raise funds for the improvement and to levy an ad valorem tax on the property in the district to pay the same; and also to co-operate with the government of the United States in making any improvements. *Held*, that the creation of a district in conformity to such provisions to improve a harbor in co-operation with the United States government was a valid exercise of the powers of the state in carrying out the public policy declared by its Constitution toward its extensive inland and coastal navigable waters, and that the levy of an ad valorem tax on all the property in the district was not a violation of constitutional rights, because no provision is made for a hearing on special benefits as to each separate piece of property; the hearing before the commissioners' court as to what property should be included within the district being sufficient.

In Equity. Suit for injunction by T. L. Smith and others against L. J. Wilson and others. Injunction denied.

R. E. Seagler and J. A. McNair, both of Houston, Tex., and A. D. Lipscomb, of Beaumont, Tex., for plaintiffs.

A. R. Rucks, of Angleton, Tex., C. D. Jessup, of Austin, Tex., Louis J. Wilson, of Angleton, Tex., and Bryan, Colgin, Suhr & Bering, of Houston, Tex., for defendants.

Before HUTCHESON and SHEPPARD, District Judges, and FOSTER, Circuit Judge.

HUTCHESON, District Judge. This is a suit brought by the plaintiffs under section 1243, U. S. Compiled Statutes of 1925, section 266, Judicial Code, as amended in 1925, against the commissioners of the Brazos river harbor navigation district of Brazoria county, Tex., and against the county judge and county commissioners and the tax officers of Brazoria county, Tex., to enjoin the defendants from proceeding in the execution of the plan of assessment, the issuance and sale of bonds, and the levy and collection of taxes on an ad valorem basis upon plaintiffs' property; plaintiffs claiming that the navigation district has been attempted to be formed in violation of the Constitution and statutes

of the state of Texas, and, further, that whether so or not, as to plaintiffs' property the burdens sought to be imposed in pursuance of its formation constitute a denial to plaintiffs of the equal protection and due process guaranties of the Fourteenth Amendment to the Constitution of the United States.

While a vast amount of testimony was taken in this case, most of it is cumulative and immaterial, and the facts upon which the decision of the matter turns may be stated with the utmost brevity. These are:

That under section 59, art. 16, of the Texas Constitution, and chapter 5 of the Acts of the Thirty-Ninth Legislature (Vernon's Ann. Civ. St. 1925, art. 8263) passed to make its mandates effective, the creation of the Brazos river harbor navigation district was petitioned for, and the boundaries of the district, as finally established, were set out and defined (see map introduced by plaintiffs and attached to this opinion), and after due notice, as provided in the statutes, after a long and patient hearing of the petition and the protests of the property owners, including plaintiffs, the commissioners' court finding that the proposed improvement was feasible and practicable, that it would be a public benefit and a public utility, and that the boundaries of the proposed district as set out in the petition should be approved, the petition was granted, the result announced by the county judge in open court, and on the same day two orders, one calling the election, the other fixing the amount of the bonds, etc., were presented to the county judge, in the presence of three of the commissioners, and were without discussion signed by the county judge and spread upon the minutes.

Thereafter, the election coming on, practically the entire voting strength of the district went to the polls. Out of a population of less than 15,000, a vote of 3,200 was cast; the district winning by a very large majority. The returns of the election were regularly canvassed, the result regularly declared by the commissioners' court, and an order was entered appointing navigation and canal commissioners, and reciting that the district had been legally and properly created. Thereafter the commissioners' court entered its orders authorizing the issuance of a million dollars in bonds, and the levy of taxes in payment therefor, which orders were signed by the county judge and the four commissioners.

Immediately after the making of these orders, plaintiffs caused this suit to be brought to prevent the district from functioning. No bonds have been sold, no taxes collected, and the Attorney General has expressly declined, because of this litigation, to approve the bonds.

Both the evidence taken before the commissioners' court and that taken on this trial establish that while there would be a direct, immediate and large benefit to the Freeport Sulphur Company, a corporation owning wharves, a sulphur plant, and large properties in and around Freeport where the navigation district is, and to other property in that vicinity, the property of plaintiffs, lying many miles back of Freeport, will not be directly or immediately benefited, but the benefit will arise indirectly from the growth of the community generally, due to the establishment and maintenance of a successful port.

In support of the finding of the commissioners that the project was practicable, a public benefit, and a public utility, the evidence discloses that the project has been approved by the United States Engineer, and that an appropriation of $500,000 has been made by Congress to be used with and supplementing the funds provided by the district, and the evidence establishes affirmatively that the creation of an excellent port will result from the improvement, which, while benefiting those owning property immediately adjacent to it, will also operate as a benefit, to some extent, throughout the entire district.

The evidence also shows that the hearing before the commissioners' court was fairly and justly conducted; the judgment of the court was found and entered, not arbitrarily, but justly and fairly, and in accordance with the statutes and the Constitution of the state, and that there was ample warrant for the judgment of the commissioners' court that the boundaries as proposed were just and reasonable, and that the district as bounded would be a public benefit and a public utility. There is no evidence from which it could be found that the property of the plaintiffs was arbitrarily and capriciously included in the district, and that the inclusion operates unconscionably, or in a confiscatory way, unless it is an act of confiscation to include property within the district without making provision at some time, for a hearing on the apportionment of taxes to benefits other than the hearing which is accorded by law to all property owners in connection with ad valorem assessments.

Section 59, art. 16, of the state Constitution, is the expression of the public policy of this state for the conservation and development of all its natural resources, including the navigation of its many inland waters, and the

utilization of its long and favorable coast line. It declares:

"There may be created within the state of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the Constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject-matter of this amendment as may be conferred by law."

The Legislature is authorized and directed to make provision for the creation of the districts and the levy and collection of the taxes.

To effectuate this constitutional mandate, the Thirty-Ninth Legislature enacted the law under which the navigation district was formed. This act, chapter 5 of the Acts of the Thirty-Ninth Legislature, also found in R. S. 1925, fully and in detail sets out the procedure under which this district was organized, provides for a hearing before and judgment by the commissioners' court on petition, which hearing should be had after notice, at which hearing those for and against the district had the right to contest or to contend for its creation, and offer testimony in favor of or against the district, to show that the proposed improvement or improvements would or would not be of any public benefit, and would or would not be feasible or practicable, and as to any other matters pertaining to the district.

It provides that the county commissioners' court shall have exclusive jurisdiction of the hearing, and shall determine all contests and objections, and all matters pertaining to the creation of the district, and all judgments or decisions rendered by the court shall be final, and it expressly authorizes that court to adopt, reject, or change, as it deemed best, the proposed boundaries.

It provides minutely and in detail for the holding of an election, for canvassing and declaring the result of it, the issuance of bonds, and the levy of ad valorem taxes to pay therefor, and specifically authorizes the district to co-operate with the government of the United States in the matter of any proposed development.

The contentions of plaintiffs on their pleadings and proof, briefly summarized, are:

(1) That the creation of the district is not in fact a public, but a private, enterprise, since though ordered by the commissioners' court of Brazoria county, that court did not use its discretion, but merely registered the will of certain alleged selfish promoters, especially the Freeport Sulphur Company, a large property owner and shipper at Freeport. Therefore the issuance of bonds therein, and the levy and assessment of taxes to pay the same, constitute a lending of public credit to a private enterprise, in violation of article 3, § 52, of the state Constitution, which prohibits the lending of public credit to any individual, and of article 8, § 3, of the State Constitution, providing that taxes shall be levied and collected for public purposes only.

(2) That if the district could have been validly created, it was not so created, because, as they claim, the commissioners' court did not make any order fixing the date of the election, and fixing the amount of bonds to be voted on, but the order therefor was signed by the county judge without the action of the commissioners' court thereon.

(3) That in any event, the inclusion of plaintiffs' property within the district is so arbitrary and unreasonable under the facts as to bring this case within the principle of Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443.

(4) That the statute under which this district was organized provides for the taking of the property of plaintiffs without due process of law or equitable distribution, in that it purports to authorize the inclusion of property without reference to benefits in a local improvement district, and the assessment of taxes thereon afterwards not in proportion to benefits, but ad valorem, and is therefore invalid, because in violation of the Fourteenth Amendment to the Constitution, invoking Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. ——.

Meeting these contentions in their order, the defendants answer:

To Contention No. 1: While it is true that some of the property will receive greater benefit than other property in the district, this fact has no bearing upon the public character of the improvement, and besides, the very question of whether the improvement is public or private has been decided by the commissioners' court, whose decision, under the Constitution and statutes of Texas, is final and conclusive.

To Contention No. 2: That the commissioners' court did in fact authorize, ratify, and confirm every step taken in the creation of the district, the issuance of bonds, and the levy of taxes.

To Contention No. 3: That the evidence makes no case whatever of an arbitrary singling out of property for the imposition of

13 F.(2d)—64

burdens where no possibility of benefits might exist; but, on the contrary, shows a case where a general area has been selected, after a full and patient hearing, as properly tributary to and concerned in a navigation district.

To Contention No. 4: That the district in question was created under the mandate of the state Constitution, as "a governmental agency, a body politic and corporate" with full powers of government as to the subjects embraced, and with the manner of exercising and discharging those powers prescribed by the Constitution and the laws. That the creation of such a district under legislative sanction, as here, violates no constitutional right of plaintiffs, both because it could have been created by the Legislature or the commissioners' court without according any hearing at all, and because the law in this case provides for, and the evidence shows the plaintiffs had, such a hearing as to the property which should or should not have been included in the district as, if a hearing were necessary, fully satisfied the law.

We are of the opinion that none of plaintiffs' contentions are sound; that defendants, rather than plaintiffs, have the right of the matter; and that under the law as applied to the undisputed facts, the relief prayed for by plaintiffs should be denied.

[1] Taking up these contentions in their order, we think it plain that their contention No. 1, that the district was formed really for a private and not a public purpose, and that the taxes voted were voted in violation of article 3, § 52, and article 8, § 3, of the state Constitution, may be disposed of summarily as, if not frivolous, certainly plainly without merit.

Every public improvement of this nature inevitably results in benefit to private individuals; in fact, in purely assessment districts as such the union of private benefit with public good is an essential to the district, and it goes without saying that the fact that the Freeport Sulphur Company, and other persons owning property in the town of Freeport, will benefit from the improvement, does not in any manner prevent the tax levy from being public in its nature. Galveston Causeway Con. Co. v. G. H. & S. A. Ry. (D. C.) 284 F. 137; affirmed (C. C. A.) 287 F. 1021.

Besides, the very question now sought to be litigated, whether the district was a public benefit, was the question submitted to and decided by the commissioners' court, whose decision upon that point is final.

Nor is their second contention, that the election was invalid because of the way the election order was presented and signed, of any more weight.

The petition for the creation of the district and the issuance of bonds was considered and reported upon favorably, and the result publicly announced, and it will be presumed that the order presented to and signed by the county judge and spread upon the minutes of the court was legally entered; especially in view of the subsequent orders and proceedings of the commissioners' court declaring the district legally and properly created, and ordering the issuance of bonds and the levy of the tax therefor.

The facts which we have found effectually dispose of their third contention, that plaintiffs' property was arbitrarily and unreasonably included in the district, within the authority of Norwood v. Baker, and kindred cases.

[2] It remains only to consider the fourth contention, which has at all times been the main question in the case, whether the acts of the commissioners' court, under the authority of the Legislature of Texas fully empowered thereto by the Constitution of the state, can be said to be, as to plaintiffs, invalid, because in their very nature they fail to provide for a hearing as such, upon special benefits, and therefore constitute a taking without due process, in violation of the equal protection clause of the Fourteenth Amendment.

Plaintiffs' insistence upon this point springs, we believe, from a misconception by them of the narrow scope of Norwood v. Baker and similar cases of peculiar and extraordinary hardship, and especially of Browning v. Hooper, on which they mainly pitch their claim. They concede that where the Legislature creates the district and levies the tax, no hearing upon the issue of special benefits need be accorded. Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763; Valley Farms v. Westchester, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. ——. But they seem to think that where the Legislature delegates the actual determination of the property to be included in the district, to any subordinate body, a provision for the hearing on special benefits as to each piece of property is essential to the validity of the tax. That this is not the law, and that none of the decisions relied upon so hold, we think clear.

It has been repeatedly declared that Norwood v. Baker presents a case of special hardship in the application of a taxing district law, and that it did not involve, nor does it support, an attack upon, or interference with, the settled taxing policies of a state. Tona-

wanda v. Lyon, 181 U. S. 391, 21 S. Ct. 609, 45 L. Ed. 908; Cass Farms v. Detroit, 181 U. S. 398, 21 S. Ct. 644, 45 L. Ed. 914, in the former of which, in speaking of the Norwood Case (172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443) the court says:

"It was not the intention of the court, in that case, to hold that the general and special taxing systems of the states, however long existing and sustained as valid by their courts, have been subverted by the Fourteenth Amendment of the Constitution of the United States. The purpose of that amendment is to extend to the citizens and residents of the states the same protection against arbitrary state legislation affecting life, liberty and property, as is afforded by the Fifth Amendment against similar legislation by Congress. The case of Norwood v. Baker [172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443] presented, as the judge in the court in the present case * * * said 'considerations of peculiar and extraordinary hardships' amounting, in the opinion of a majority of the judges of this court, to actual confiscation of private property to public use, and bringing the case fairly within the reach of the Fourteenth Amendment."

In Valley Farms v. Westchester, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585, in which the Norwood Case, the case of Myles Salt Co. v. Commissioners, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190, Gast Realty Co. v. Schneider, 240 U. S. 55, 36 S. Ct. 400, 60 L. Ed. 1239, and other cases were invoked, the court denied their application, saying:

"Since Houck v. Little River Drainage District (1915) 239 U. S. 254 [36 S. Ct. 58, 60 L. Ed. 266], the doctrine has been definitely settled that in the absence of flagrant abuse or purely arbitrary action a state may establish drainage districts and tax lands therein for local improvements, and that none of such lands may escape liability solely because they will not receive direct benefits."

Myles Salt Company and other cases named "present facts deemed sufficient to show action 'palpably arbitrary and a plain abuse' of power. Here the allegations make out no such situation. All lands within the district ultimately may be connected with some portion of the sewer and we cannot say they derive no benefits therefrom or that any were included arbitrarily or for improper purposes. It was unnecessary for the legislature to give notice and grant hearings. * * * The state courts held that since the rolls of the local assessors are adopted for taxing property within the district, the right of owners to be heard as to values is adequately protected and we think under the circumstances, they can demand no more."

The case at bar is a case of a governmental body created by the authority of the Legislature under a mandate of the Constitution, declaring the public policy of the state toward its inland and coastal navigable waters, with provisions for the levy of a tax to make and pay for the necessary improvements, which action is in all respects valid under the Constitution and laws of the state of Texas, Dallas County Levee District v. Looney, 109 Tex. 326, 207 S. W. 310; T. & P. Ry. Co. v. Ward County, 112 Tex. 595, 251 S. W. 212. And it ought to be held by the courts of the United States that no federal constitutional right is violated by such procedure, unless a clear case of abuse or confiscation in its operation is shown.

The state of Texas has a coastal line of 375 miles on the Gulf of Mexico, with many navigable rivers emptying into it, and the Legislature has the right, in order to carry out the policy of the state, as expressed in its Constitution, either directly or through commissioners' courts thereunto duly authorized, to create navigation districts as state governmental bodies, corporate and politic, with governmental powers over the subject of their creation, to the same extent and as fully as it has to create other municipalities in the state, and when so created, those districts had the governmental power to levy ad valorem taxes for the purpose of making the improvements necessary to realize the public purpose declared. We think it clear that such measures of policy so devised and so carried out in no manner infringe upon private rights, nor constitute a violation of the Fourteenth Amendment.

If the carrying out of this policy of the state is dependent upon the showing at a hearing of benefits accruing directly to each piece of property in the district, the entire public policy must be defeated, for because of the very nature of the improvement it is impossible to trace special direct benefits in the ordinary sense of that term as it is used in specific local improvement taxing districts. The most the state can and ought to do, in forming such governmental districts as this, is to make provision for considering the question of public utility and the public good, in which, as the Supreme Court has said, "the question of private good under a just government is necessarily involved."

In this case, plaintiffs having had a personal and full hearing as to whether their property should or should not be included in

the district, before a board having full authority to include or exclude them as it found the facts to be, have been given the fullest protection of their rights, and they cannot be now heard to complain of their inclusion; that matter having been foreclosed and determined by a body appointed and acting for that purpose.

We think this case is ruled by Wight v. Police Jury, 264 F. 705, in which, where a road district had been created under the authority of the Legislature by a police jury of Louisiana, it was held by the Circuit Court of Appeals, Fifth Circuit, that these districts were governmental bodies like other municipal corporations, and that no question of a constitutional right to a hearing on special benefits could be raised. From that case, as conclusive of this, we quote the following:

"The laying out, the construction and maintenance, of public roads, are not matters to be determined with reference to benefits to particular individuals, but with reference to the interest of all those persons whose rights and property and general well-being are the chief concern of government. No property owner is entitled to specific notice of the formation of a road district in which the roads are to be constructed for the general good, and in which the expense is to be met by a general property tax. He is not entitled to notice of an action which the law assumes equally affects all citizens. He is not entitled to notice, in order that he might protest against the inclusion or exclusion of his property. The law contemplates that all of the property of the state may go into some district, and it is for the lawmaking power, and not the individual property owner, to determine the boundaries of the district. He is not entitled to notice to enable him to show that the formation of the district, with its possible tax, will bring him no benefit. There is an absolute presumption of benefit from governmental activities of this character. In the levy of road taxes, as in all other taxes, some persons may pay small amounts in the way of taxes and receive great benefits, and other persons may pay considerable taxes and receive limited benefits. This inequality is inherent in all taxation and in all governmental activities. While, however, there may not be equality in the benefit to be derived from roads, it is not that character of inequality which the law is capable of eliminating, and not that character of inequality of which the Constitution takes cognizance. These road taxes are of the same general character as school taxes, held to be legal, and to meet the constitutional requirements of uniformity, notwithstanding many taxpayers are entirely without direct benefit."

And by Hancock v. City of Muskogee, 250 U. S. 455, 39 S. Ct. 528, 63 L. Ed. 1081.

Should it be considered, however, that the case is not so ruled, and that some kind of hearing was necessary, the kind of hearing required by the Constitution was in fact given.

In Houck v. Little River Drainage District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266, the court says:

"The legislature, unless restricted by the state Constitution, can create such districts directly, or, as in this case, it may provide for their institution through a proceeding in the courts in which the parties interested are cited to appear and present their objections, if any. The propriety of a delegation of this sort was a question for the state alone. And with respect to districts thus formed, whether by the Legislature directly or in an appropriate proceeding under its authority the legislature may itself fix the basis of taxation or assessment, that is, it may define the apportionment of the burden, and its action cannot be assailed under the Fourteenth Amendment unless it is palpably arbitrary and a plain abuse."

In Embree v. Kansas City, 240 U. S. 242, 36 S. Ct. 317, 60 L. Ed. 624, which was a case of a road district created by an order of the county court under authority of the legislature just as here, with a tax laid ad valorem, the court said:

"The district was not established or defined by the legislature but by an order of the county court made under a general law. Whether there was need for the district and, if so, what lands should be included and what excluded was committed to the judgment and discretion of that court. * * *

"That a hearing of some kind was contemplated is obvious, and is conceded. But it is insisted that it was not to be directed to the question whether the lands included would be benefited by the creation of the district and what it was intended to accomplish. If that were so, there would be little purpose in the hearing and no real necessity for it.

"True, the statute does not in terms say that lands which will not be benefited shall be excluded or that only such as will be benefited shall be included, but it does say that the court shall make such change in the proposed boundaries 'as the public good may require.' In the presence of this comprehensive direction there can be no doubt that the Legislature intended to authorize and require the county court to adjust the boundaries so they would include only such lands as might be reason-

ably expected to be benefited by the improvement of the district roads and therefore might be properly charged with the cost of that work. That there is an inseparable union between the public good and due regard for private rights should not be forgotten. * * *

"We conclude therefore that the statute did provide for according the land owners an opportunity to be heard, when the district was created, upon the question whether their lands would be benefited."

But the plaintiffs say the Supreme Court of the United States, in Browning v. Hooper, has affirmed their right to a different kind of hearing to that accorded here, and that a showing of direct benefit is a condition to the validity of the tax. In this plaintiffs are in error, for that case, while final and conclusive in favor of plaintiffs situated as those in Archer county road district were against a tax levy as there laid, is equally conclusive against the claim of plaintiffs situated as those in the case at bar.

The differentiating facts between Browning's position and that of the plaintiffs here are that whereas here the county commissioners acting in the exercise of properly delegated authority, with the full right to accept, reject, or change the proposed boundaries, created the district, and authorized the issuance of bonds, and the levy of the tax, there neither the Legislature nor the commissioners' court had anything to do with the determination of the questions whether the district should be created, the amount of bonds it would issue, and the taxes it would levy, but in all of these matters the commissioners' court acted in a purely ministerial capacity to register the will of petitioners and as to the nonconsenting property owners in the district, its creation and the voting of bonds and levy of taxes by it was not a governmental act under legislative authority, but an act of expropriation under the purported sanction of law, by those interested in the creation of the district, and therefore a violation, as to the plaintiffs, of the Fourteenth Amendment.

The following quotations from that case will show the grounds of its decision, and how little comfort plaintiffs may draw from it. There, discussing the Texas statute authorizing the creation of road districts, the court said:

"It is significant that, in the case of a road district, the court's duties in respect of the amount to be raised and the lands to be subjected to the charge are purely ministerial, and confined solely to carrying out the will of the petitioners when approved at the election.

Here, on the initiation of individuals signing the petition, a special district was carved out to furnish credit and to pay for specified improvements on designated roads wholly within the territory selected. The purpose was special, and the district will cease to exist as a body corporate upon the payment of the bond debt. It is clear that the burdens here sought to be imposed on appellants' lands are special assessments for local improvements. * * *

"The Legislature did not create the road district, levy the tax or fix the amount to be raised. * * * There is nothing in the law to guide or to limit the action of the signers of the petition in selecting property to be assessed. Subject to the vote of a district of their own choice, the petitioners' designation is absolute. The commissioners' court has no power to modify or deny; it is bound to grant the petition. * * * And when the required vote is given, the court, once for all, must make a levy on the taxable property of the district sufficient to pay the entire debt as it matures." 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. ——.

Again—

"The amount of the bonds to be issued and the property to be taxed are the elements which determine the burden. These were fixed by the petition and election. The Legislature may make assessments for local improvements ratably on the basis of property valuation * * * but, where the amount to be raised is determined and the property to be assessed is selected as in this case, the requirement that the burden shall be so spread is not a legislative assessment." 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. ——.

"Where a local improvement territory is selected, and the burden is spread by the Legislature or by a municipality to which the state has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits"—citing Valley Farms Co. v. Westchester, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Hancock v. Muskogee, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081; Withnell v. Construction Co., 249 U. S. 63, 39 S. Ct. 200, 63 L. Ed. 479; Wight v. Police Jury, 264 F. 705. 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. ——.

Finding, as we do, that plaintiffs and their property have been merely brought under the jurisdiction of a new governmental agency, a body politic and corporate, by the constitutionally authorized action of the commissioners' court of Brazoria county, and that none

of plaintiffs' constitutional rights have been infringed, all their prayers for injunctive relief will be denied.