## WESTERN UNION TELEGRAPH CO. v. WICHITA COUNTY WATER IMPROVEMENT DIST. NO. 1.

### No. 1373—5533.

Commission of Appeals of Texas, Section A.
June 25, 1930.

Francis R. Stark, of New York City, and William H. Flippen and John T. Gano, both of Dallas, for plaintiff in error.

Raymond M. Myers and A. H. Britain, both of Wichita Falls, for defendant in error.

CRITZ, J.

This suit was instituted by the Wichita county water improvement district No. 1, hereafter referred to as the district, against Western Union Telegraph Company, hereafter referred to as the company, in the district court of Wichita county, Tex., to recover taxes on personal property alleged to be due the district by the company covering a period of seven years, and totaling the sum of $876.55, and also praying for foreclosure of the alleged tax lien against the property of the company alleged to be personalty, and of a value of not less than $9,000. The suit was first filed on July 22, 1927. Thereafter at the proper time and in the proper manner the company sought to remove the cause to the District Court of the United States for the Northern District of Texas at Wichita Falls, Tex. The cause was removed as sought. At the proper time the district filed in the United States District Court its motion to remand the cause to the state court. This motion was granted, and the cause remanded to the state court for trial. We therefore are not concerned with that matter.

After the cause was remanded to the state court by the federal court, the district filed an amended petition, which set up the same cause of action as the original petition and prayed for the same relief, but pleaded the case more in detail. The company answered the petition of the district, and defended the suit on the ground that the act under which the district was sought to be created was unconstitutional, for reasons stated later in this opinion, and on the further ground that the law does not contemplate the taxation of personal property. Trial in the district court without a jury resulted in a judgment for the district. This judgment was affirmed by the Court of Civil Appeals. 19 S.W.(2d) 186, 187. The case is now before the Supreme Court on writ of error granted on application of the company.

As shown by the opinion of the Court of Civil Appeals: "The acts of the Legislature authorizing the organization of water improvement districts will be found under title 73, chapter 2, of the Revised Civil Statutes of Texas 1911, and of Vernon's Civil Statutes of Texas, Supplements for 1918 and 1922, art. 5107, subds. 1 to 117. These provisions, with amendments, are now found in the Revised Civil Statutes of Texas 1925, but plaintiff in error concedes that, the plaintiff corporation or district having been organized in 1919, the provisions of the 1918 supplement control the disposition of the questions affecting the validity of the levying of the taxes herein contested."

The company attacks the constitutionality of the act under which the district was created by numerous assignments of error, but, simply stated, they amount to this:

(a) That the act authorizing the incorporation and organization of the instant district is absolutely unconstitutional and void, because it provides for petition for incorporation and hearings thereon as to benefits for owners of land only, and excludes the owners of personal property as petitioners for incorporation, and in the hearings and proceedings on such petition as to benefits, at the same time including personal property within the taxes of the district.

(b) That the act authorizing the incorporation and organization of the instant district, if not absolutely unconstitutional and void, is unconstitutional and void in so far as it applies to personal property for the same reasons stated in (a) above.

(c) That the act authorizing the incorporation and organization of the instant district does not contemplate the taxation of personal property.

As above stated, the district was incorporated and organized under the several subdivisions of article 5107, Vernon's Texas Civil & Criminal Statutes, 1918 Supplement (articles 5107—1 to 5107—117). The subdivisions of said article directly and indirectly involved in the attack on the constitutionality of the act are subdivisions 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 of such article (articles 5107—1 to 5107—10).

Section 1 authorizes the commissioners' court of any county to establish one or more water improvement districts, and provides that such districts may or may not include within their boundaries, villages, towns, and municipal corporations, or any part thereof. Such subdivision also defines the powers of the district when created, which includes the power to levy taxes and issue bonds, etc.

This subdivision further provides that, on petition signed by certain landowners of the proposed district praying for the establishment of a water improvement district, etc., the commissioners' court shall set time for hearing and give notice of such hearing.

Section 2 of the article provides that any person who owns land in the district may appear and contest the creation of the district or contend for the creation thereof, and may offer testimony to show that such district is or is not *necessary* and would or would not be a *public utility*, and the creation of such district would or would not be *feasible and practicable*, etc.

Section 3 of the article provides that if at the hearings above provided for it shall appear to the satisfaction of the court that the organization of the district is *feasible and practicable* and that it is *needed* and would be a *public benefit* and a benefit to the lands included in the district, then the court shall so find, etc.; but, if the court should find that the irrigation of the lands of such district is not *feasible and practicable*, and that it would not be a *public benefit*, or is not *needed* or would not be a *public utility*, then the court may enter such findings and dismiss the petition.

Section 4 provides a method of appeal by the landowners of the district, and procedure thereunder. Under this subdivision the same matters are inquired into and adjudicated by the district court that were before the commissioners' court; that is, whether the proposed district is *feasible and practicable* and would be a *public benefit*, or is *needed* or would be a *public utility*. This is because the district court on appeal, would consider and adjudicate the same matters that were submitted to the commissioners' court.

Section 5 provides for ordering an election by the commissioners' court to determine whether such district shall be created, at which election the question voted or is submitted in the following form: "For The Water Improvement District" and "Against The Water Improvement District" and "The Election of 5 Directors."

Section 6 provides for giving notice of said election, and what said notice shall contain, etc.

Section 7 provides the manner of conducting such election and provides that no one but "resident property tax payers" shall vote. This section also provides that the voters shall vote for and against the water improvement district, and further provides that the ballot shall contain a space in which to write the name or names of the officer or officers to be selected at such election.

Section 8 provides that the tax collector shall furnish the presiding judges of the election with a certified list of the property tax payers of the district, and provides that no person is entitled to vote at any election under the act unless his name appears in the certified list of property tax payers, unless such person acquired property in the district after the 1st day of January of the preceding year, etc.

Section 9 provides for the returns and canvass of the election by the commissioners' court, and further provides that, if it be found that two-thirds of the resident property tax payers voting shall have cast their votes in favor of the district, then the court shall declare the result of said election in favor of the establishment of the district, and shall enter the order upon the minutes of the court. This section also requires the court to canvass the vote for directors, and to cause to be issued to the five directors receiving the highest number of votes certificates of their election, etc.

Section 10 provides that, if the commissioners' court shall declare the result of said election to be in favor of the establishment of the district, then the court shall cause to be made and entered on the minutes an order setting forth certain facts, and creating and establishing the district, giving it its name and number.

The article in question, 5107, contained at the time this district was organized 117 subdivisions. We have given the substance of the provisions of the several subdivisions which we think are involved in the attack here made on the statutes.

■ As above stated, it seems to be the contention of the company that the act in question is unconstitutional and void because it provides for taxing personal property, and permits owners thereof, to vote on the creation of the district, and the levying of all taxes thereof, but does not permit such owners of personal property to take part in petitioning for the district or in the hearings as to benefits had thereon. We think these contentions should be overruled.

A careful reading of the act will show that at the hearings provided the court must find the district to be *feasible and practicable*, a *public benefit*, a *benefit to the lands*, a thing *needed*, and a *public utility*. Nowhere in the act is the commissioners' court authorized to submit the creation of the district to the voters of the district merely on a finding of benefits to the lands alone, and the statutes are now susceptible to such a construction. Under the plain terms of the statute the commissioners' court cannot even submit the formation of the district to the voters until it has affirmatively found that same would be *feasible and practicable*, a *public benefit*, a *public utility*, and is *needed*. Nowhere in the act are its provisions with respect to findings confined to lands alone. Such a district violates no provision of our State or Federal Constitution. Browning v. Hooper, 269 U. S.

396, 46 S. Ct. 141, 143, 70 L. Ed. 330 (United States Supreme Court, Archer County Case); Hester & Roberts v. Donna Irrigation District, 239 S. W. 992 (Tex. Civ. App. writ refused); Parker v. El Paso Water Improvement District, No. 1, 116 Tex. 631, 297 S. W. 737; Smith v. Wilson (D. C.) 13 F.(2d) 1007; Branson v. Bush, 251 U. S. 184, 40 S. Ct. 113, 64 L. Ed. 215. We might cite numerous other authorities, but we deem the above sufficient. We also refer to the authorities cited by the Court of Civil Appeals in the instant case. Furthermore, while the act only provides for a petition by landowners and a contest and an appeal by landowners, there is nothing in the act to prevent the court considering the matter from hearing such testimony as it sees fit on the questions of public benefits, etc.

The company seems to rely principally on the authority of Browning v. Hooper, supra, to sustain its contentions as to the unconstitutionality of this act. In our opinion the holding of the Supreme Court of the United States in that case is direct authority for sustaining the constitutionality of the act under which the instant district was created. In that case the court expressly held: "Where a local improvement territory is selected, and the burden is spread by the Legislature, or by a municipality to which the state has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. Valley Farms Co. v. Westchester, supra [261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585]; Hancock v. Muskogee, 250 U. S. 454, 459, 63 L. Ed. 1081, 1084, 39 S. Ct. 528; Withnell v. Ruecking Constr. Co., 249 U. S. 63, 69, 63 L. Ed. 479, 483, 39 S. Ct. 200; Wight v. Avoyelles (C. C. A. 5th) 264 F. 705."

The act under which the instant district was created and organized provided for certain proceedings with reference to incorporating the district. The commissioners' court was compelled to find certain things before it was authorized to order an election, and was given general discretionary powers to determine benefits to the land included, and in addition had power to determine whether the district would be a public utility and a public benefit, etc. Also the district here created will continue as a body corporate fully organized, with a board of directors and corporate officers, and will continue to operate and function after all bonds and indebtednesses of the district are paid. It is not created for the sole purpose of issuing bonds, but will continue to function as a body corporate until it is dissolved in some manner provided by law. Such a district is not condemned by Browning v. Hooper, but is expressly upheld.

■ It is contended that the owners of personal property receive no direct benefits from the district. This may be true, but it is not necessary that property receive direct benefits in order to be lawfully included in the district and under its taxes. Parker v. El Paso County Water Improvement District, 116 Tex. 631, 297 S. W. 737. An examination of the agreed statement of facts herein shows that the property and business of this company has been greatly benefited by the formation and operation of the district. It is also conclusively shown that the formation of this district has greatly benefited and developed the territory thereof in a general way.

■■ We are further of the opinion that, if it be admitted that the instant district was unconstitutional and void at the time it was incorporated and organized, that same, together with its taxes and bonds, have been fully and completely validated by the following act passed by the First Called Session of the Thirty-Seventh Legislature of Texas, chapter 6, § 139, approved August 13, 1921, and now article 7796, R. C. S. of Texas, 1925:

"All proceedings heretofore had and taken to organize a water improvement district under the Act to which this is an amendment, or to determine the manner in which taxes or assessments shall be levied and collected, or to bring any district organized hereunder under the provisions of Section 59 of Article 16 of the Constitution of Texas, or to authorize the issuance of bonds of any district organized under the Act to which this is an amendment, whether such district shall or shall not have come under said Section 59 of Article 16 of the Constitution, shall be and are hereby in all respects ratified, validated, approved and confirmed, and such bonds may be issued and sold in the form and manner and at the price and under the conditions prescribed by law."

We cite the following authorities by our own Supreme Court, by the Commission, and by the Supreme Court of the United States, which fully sustain and uphold the right and power of the Legislature to cure and make valid this district, its taxes and bonds, even if it was invalid in its creation: Tom Green County et al. v. Moody, Attorney General, 116 Tex. 299, 289 S. W. 381; Anderson County Road District, etc., v. Pollard, Attorney General (Tex. Sup.) 296 S. W. 1062; Twing v. Rhodes (Tex. Com. App.) 16 S.W.(2d) 258; Kansas City So. Ry. Co. v. Road Improvement District No. 3, Sevier County, Ark., 266 U. S. 380, 45 S. Ct. 136, 69 L. Ed. 335; Charlotte Harbor & N. Ry. Co. v. Welles, Board of County Commissioners of D. S. County Fla., 260 U. S. 8, 43 S. Ct. 3, 67 L. Ed. 102. We also refer to the many authorities cited and discussed by our Supreme Court in the Tom Green County and the Anderson County Cases, supra. These two cases, the first mentioned by Justice Greenwood and the second by Chief Justice Cureton, exhaustively discussed the power and authority of the Legislature to enact this character of validating legislation, and no good purpose would be served by our attempting to again discuss the question. We hold that under the authorities

above cited the Act of the Thirty-Seventh Legislature validated this district with its taxes and bonds even if it be conceded that it was invalid in the beginning. We state, however, that we also hold that it was valid in the beginning.

■ This brings us to a consideration of the assignment to the effect that the act does not contemplate the taxation of personal property. A careful reading of the act itself conclusively shows that it directly and by its express terms contemplates an ad valorem tax on personal property. This is evident from the following provisions of the act in question:

Section 7 provides that resident property tax payers, who are qualified voters of the district, shall be entitled to vote on any question submitted to the voters thereon at such election. The election here referred to is the election for incorporation. Section 3 makes it the duty of the tax collector of the county before the district is formed, and of the district after it is formed, to make out a certified list of property tax payers of the district and furnish same to the presiding judges of the election, and, before any person is entitled to vote at any election under the act, his name must appear in said certified list of property tax payers, unless such person acquired property in the district after the 1st of January of the preceding year, etc. Section 15 provides for the appointment of an assessor and collector for the district, and fixes his qualifications, etc. Section 25 defines the duties of the assessor and collector, and expressly provides that he shall make an assessment of all taxable property, both real, personal, and mixed, in said district, and that such assessment shall be made annually thereafter. Said section further provides that the assessment shall consist of a full statement of all property owned by the party rendering same in said district and subject to taxation therein, etc. Section 26 provides for the appointment of a board of equalization for the district, etc. Section 27 prescribed the oath of this board, and the oath prescribed states that the board will make a complete examination, correction, equalization, and appraisement of all property contained within the district as shown by the assessment lists or books of the assessor, etc. The statutes in several other particulars specify the way and manner in which delinquent tax lists shall be made, and delinquent taxes collected and other matters with reference to taxation, but we think we have stated sufficient to show that it is the plain purpose and intent of the statute to comprise within its scope all property subject to an ad valorem tax under the Constitution and laws of this state. This construction is absolutely borne out by the provisions of section 25, supra, which, as shown above, require all taxable property, real, personal, and mixed, to be assessed annually. Furthermore, an examination of the several sections shows that the owners of personal property are given the right to vote upon all matters pertaining to the district, both as to the incorporation of the same originally, and the voting of taxes after the district is formed.

Finally we refer to and approve the opinion of the Court of Civil Appeals in the instant case on the constitutional questions here raised.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed.