C. M. Cureton, Chief Justice.

---

COUNTY OF TOM GREEN ET AL. V. DAN MOODY, ATTORNEY-GENERAL.

No. 4580. Decided December 23, 1926.

(289 S. W., 381).

1.—Constitutional Law—Counties—Road Improvement Bonds—Mandamus.

Bonds issued by a county in due compliance with Article 3, Section 52, of the State Constitution as amended in 1904, and with the Acts of 1907, 1909 and 1917, Rev. Stats., 1925, Arts. 727, 728, 729, were not unconstitutional as violating the due process clause of the Fourteenth Amendment to the Constitution of the United States, and their approval by the Attorney-General is here enforced by mandamus. (Pp. 303-311).

2.—Same—Case Distinguished.

When the Legislature authorizes a county, a political division of the State, to issue bonds for improvement of public roads therein, to be met by ad valorem taxation on all property within such county, their amount within permitted limits, to be fixed by order of the Commissioner's Court for the election to authorize their issuance, the Legislature has itself selected the property to be taxed, and, by delegated authority to the Commissioner's Court, the amount of indebtedness to be incurred. Browning v. Hooper, 269 U. S., 396, distinguished. (P. 306).

**3.—Highways—Taxation.**

The making and maintaining of highways is a governmental affair, and the purpose one for which taxation is legitimate. The Legislature may exercise such right of taxation directly, or delegate it to a political division such as a county, and a tax so levied does not lose its character as a general tax because it operates only on property within a single county. It was for the Legislature to determine whether the cost should be borne by the State at large, or by the county particularly benefited. (Pp. 306-308).

**4.—Same.**

The Legislature has full discretion to adopt the method of taxing all properties in a county at assessed values, for the cost of a highway to be improved within the county. The power of petitioners to initiate a bond issue, and of tax paying electors to authorize it is a mere check on the power conferred by the Legislature on the county and the Commissioner's Court to create the debt, to determine its amount, and to levy taxes therefor, and not a conferring of such power on petitioners or electors. (P. 308).

**5.—Validating Act.**

Whatever a Legislature can authorize it can subsequently validate, if invalid merely for want of legislative authority. The validating Act approved October 14, 1926 (Special Laws 39th Leg., Called Session, page 175) ratified and validated all proceedings by which the issuance of the bonds of Tom Green County here involved were authorized. (Pp. 311, 312).

Original application to the Supreme Court by the County of Tom Green and its officers for writ of mandamus against Moody as Attorney-General.

*W. P. Dumas* and *W. C. Blanks,* for relators.

It is virtually agreed between the parties that if that portion of the Act (Chapter 3, Title 22, Revised Statutes, 1925) authorizing counties to issue road bonds is constitutional as applied to the facts in this case, the writ of mandamus should be awarded, but if such Act is unconstitutional, as applied to such facts, then the writ should be denied. That the Act as applied to the county was valid: Browning v. Hooper, 269 U. S., 396; Constitution of Texas, Art. 3, Sec. 52, Art. 9, Sec. 1, Art. 11, Sec. 1; Rev. Stats., 1925, Ch. 2, Title 22; General Laws, 35th Legislature, Ch. 203, Sec. 2; Rev. Stats., 1925, Ch. 3, Title 22; Aransas Co. v. Coleman-Fulton Pasture Co., 191 S. W., 553; 15 Corpus Juris, pp. 611, 614, 615, 632; Rev. Stats., 1925, Art. 739; Const. of Texas, Art. 13, Secs. 9, 15 and 17, Art. 11, Secs. 4, 5 and 7, Art. 3, Sec. 52, Art. 16, Sec. 59; Bell County v. Hines, 219 S. W., 556.

Even if that portion of the Act providing for the voting and the issuance of bonds by road districts is repugnant to the due

process clause of the Fourteenth Amendment—as held by the United States Supreme Court under the particular facts in Browning v. Hooper—it does not follow that the entire Act is invalid. The first road bond act passed by the Legislature pursuant to amended Section 52, Article 3, authorized counties and political subdivisions to vote and issue such bonds. (Chapter 134, Acts 1907.) It was not until the First Called Session of the Thirty-second Legislature, in 1909, that such authority was also given "defined districts." An examination of the Act will show that the provisions thereof relative to the issuance of county road bonds has always been separable from the portion thereof relative to "political subdivisions" and "defined districts." City of Rockdale v. Cureton, 111 Texas, 136; Western U. Tel. Co. v. State, 62 Texas, 630; Zwernemann v. Von Rosenberg, 76 Texas, 522; Texas & P. Ry. Co. v. Mahaffey, 98 Texas, 392; Allen v. Texas & P. Ry. Co., 100 Texas, 525; Consumers Lignite Co. v. Grant, 191 S. W., 202; Lawson v. Baker, 220 S. W., 260.

In a supplemental brief counsel for relators called attention to the curative Act of the Legislature, then just passed, and discussed its effect.

*Andrews, Streetman, Logue & Mobley,* as amici curiæ, by leave of the court, filed brief in support of relator's positions, citing the following authorities: Holding in Archer County Case Not Applicable to County Issues of Bonds. (1) On requisites of petition for election: Pendleton v. Letcher County Ct., 240 S. W., 358; Ferguson v. Davidson, 49 S. W., 857. (2) On construction which will render law constitutional: Arkansas Gas Co. v. R. R. Commission, 261 U. S., 379; State of Texas v. Eastern Texas R. Co., 258 U. S., 204; U. S. v. Delaware & Hudson Co., 213 U. S., 366. Purpose of Sec. 52, Art. 3, of Texas Constitution: Aransas County v. Coleman-Fulton Pasture Co., 108 Texas, 216, 191 S. W., 553. Construction of Public Roads Is Governmental Function: Wight v. Police Jury, 264 Fed., 711; Robbins v. Limestone County, 114 Texas, 356; State v. Board of Commissioners, 82 N. E., 482. State May Construct Roads by General Taxation or by Special Assessment: Missouri Pac. R. R. Co. v. Western Crawford Imp. Dist., 266 U. S., 187; Houck v. Little River Drainage Dist., 239 U. S., 254. Distinction Between General Taxation and Special Assessment: Dallas County Levee Dist. v. Looney, 109 Texas, 332; Town of Macon v. Patty, 57 Miss., 378, 34 Am. Rep., 451; Illinois Cent. R. Co. v. City of Decatur, 147 U. S., 190, 37 L. Ed., 134; Page & Jones, Taxation by Assessment, Vol. 1, Chap. 3, Secs. 35 *et*

*seq.* Levy of Taxes for Local Improvements on *ad valorem* Basis Universally Held Constitutional: Dallas County Levee Dist. v. Looney, 109 Texas, 332; Fallbrook Irr. Dist. v. Bradley, 164 U. S., 176. Notice and Opportunity to Be Heard in Instances of Local Improvements: Wagner v. Laeser, 239 U. S., 207, 60 L. Ed., 236; Paulson v. City of Portland, 149 U. S., 30, 37 L. Ed., 640; Fallbrook Irr. Dist. v. Bradley, 164 U. S., 112, 41 L. Ed., 394; Hancock v. City of Muskogee, 250 U. S., 454, 63 L. Ed., 1081; Harmon v. Gephart, 90 N. E., 890; Valley Farms Company v. Westchester County, 261 U. S., 155, 67 L. Ed., 585; Valley Farms Co. v. City of Yonkers, 184 N. Y. Supp., 300. Effect of Partial Invalidity of Statutes in Question: 6 Ruling Case Law, Secs. 121 and 122; 36 Cyc., p. 976; Black's Constitutional Law, Sec. 44; City of Rockdale v. Cureton, 229 S. W., 852.

*Dan Moody,* Attorney-General, and *C. H. Wheeler,* Assistant, for respondent.

*Doty & Watkins,* as amici curiæ, by leave of the court, and with consent of the Attorney-General, also filed brief for respondent.

The Supreme Court of the United States, in the Archer County road bond case, held the entire Act of the Texas Legislature, whereby counties, political subdivisions or defined districts, were authorized to issue bonds for road improvement purposes under the provision of Section 52, Article 3, of the Constitution, repugnant to the due process clause of the Fourteenth Amendment of the Federal Constitution, therefore void, and the decision of that court upon the question is binding upon this court.

It is obvious that the Legislature, in enacting the special road bond law, intended to provide a system for the issuance of bonds for the improvement of roads in the counties of Texas, and that the Legislature would not have enacted the law in question in any other form than the one it did adopt. It having been declared that this act is repugnant to the due process clause of the Fourteenth Amendment in a case involving the issuance of bonds for road districts, the entire act is invalid. Western Union v. State, 62 Texas, 630; Ex parte Towles, 48 Texas, 413; Kimbrough v. Barnett, 93 Texas, 301, 55 S. W., 120; Sutherland on Statutory Construction, Secs. 169-178.

The briefs of same counsel in Browning v. Hooper, before the Supreme Court of the United States were also filed here.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The County of Tom Green and its County Judge and County Commissioners seek a mandamus requiring the Attorney-General of Texas to approve certain of the county's road bonds. There is no requirement of the Constitution or statutes of Texas specifically relating to a county bond issue for road improvements which has not been scrupulously complied with according to the pleadings of the parties. The sole ground for the Attorney-General's refusal to approve the bonds is that the statutes authorizing counties to issue bonds for the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes and to provide for the payment of such bonds violate the due process clause of the Constitution of the United States.

The Constitution of Texas, by amendment adopted at an election held November 8, 1904, declares:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the State or any defined district now or hereafter to be described and defined within the State of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same for the following purposes, to-wit:

"(a) The improvement of rivers, creeks and streams to prevent overflows, and to permit of navigation thereof or irrigation thereof, or in aid of such purposes.

"(b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

"(c)   The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof." Sec. 52, Art. 3, Constitution, Complete Texas Statutes of 1920, page 20.

The statute which governed when the election was ordered to authorize the issuance of the bonds provided:

"Upon the petition of fifty, or a majority of resident property tax paying voters of any county, or political subdivision or defined district of any county in this State, to the County Commissioners' Court of such county, such court shall have the power, and it is hereby made its duty, at any regular or special session thereof, to order an election to be held in such county, political subdivision or defined district thereof, to determine whether or not the bonds of such county, or political subdivision or defined district thereof, shall be issued in any amount not to exceed one-fourth of the assessed valuation of the real property of such county, or political subdivision or defined district, for the purpose of constructing, maintaining or operating macadamized, graveled or paved roads and turnpikes, or in aid thereof; and, at such election, there shall also be submitted to such resident property tax paying voters the question as to whether or not a tax shall be levied upon the property of said county, or political subdivision or defined district thereof, subject to taxation, for the purpose of paying the interest on said bonds and to provide a sinking fund for the redemption thereof. The amount of bonds proposed to be issued, with rate of interest thereon and date of maturity, shall be stated in the order ordering said election, and in the notice therefor; or such order and notice may provide that the bonds may bear interest at a rate to be fixed by the Commissioners' Court, not to exceed five and one-half per cent, and that the bonds may mature at such times as may be fixed by the Commissioners' Court, serially or otherwise, not to exceed thirty years from their date, except as otherwise provided in Articles 637a and 637b hereof; provided that where such election is ordered for a political subdivision or defined district of a county, other than the whole county, such order and notice of election shall describe the boundaries thereof as described and defined in the order of the court establishing such political subdivision or defined district of the county." (Acts 1907, p. 250; Acts 1909 S. S., p. 271, Sec. 2; Acts 1917, Ch. 203, Sec. 1; Arts. 727, 728, 729, Revised Statutes of 1925).

Other articles regulate the time, place and manner of holding the election, prescribe the published notice which must be given of the election, and make it the duty of the Commis-

sioners' Court, as soon as practicable after the Court finds that at least a two-thirds majority of the voters were in favor of the bonds, to issue same "on the faith and credit of said county, political subdivision or defined district, as the case may be." The Court is empowered to sell the bonds, after they have been examined and approved by the Attorney-General and registered by the Comptroller, and the Court is required to levy a tax sufficient to meet the bonds, after placing them on the market. The county tax assessor and collector is required to assess and collect the taxes levied to redeem the bonds and to pay such taxes to the county treasurer. Articles 629 to 634, Complete Texas Statutes of 1920; Articles 730 to 746, Revised Statutes of 1925.

Relying on the opinion of the Supreme Court of the United States in Browning v. Hooper (269 U. S., 396), called the Archer County case, the respondent questions the validity of these statutes, presenting the contention that provision to meet the bonds is not made by the levy of a general tax but by the imposition of special assessments, and that the attempt to impose such special assessments violates the due process clause in the Fourteenth Amendment to the Constitution of the United States, in that the Legislature has not defined the property to be taxed nor the amount of the taxes to be raised, but has left these matters to be fixed wholly by the interested petitioners for the election and by the voters, with no provision whatever for any sort of determination of benefits to be received by the property sought to be taxed.

The decision in Browning v. Hooper held invalid a proposed bond issue by defined road district, embracing a portion of Archer County, because the issuance of those bonds would impose a charge, in the form of a special assessment, on the lands of the complainants within the district, when neither the Legislature nor any appropriate body to whom the legislative power was delegated had determined the property to be taxed nor the amount of the bonds. The opinion of Mr. Justice Butler says:

"The Legislature did not create the road district, levy the tax or fix the amount to be raised * * *. There is nothing in the law to guide or limit the action of the signers of the petition in selecting property to be assessed. Subject to the vote of a district of their own choice, the petitioners' designation is absolute. The Commissioners' Court has no power to modify or deny; it is bound to grant the petition * * *. And when the required vote is given, the court, once for all, must make a levy

on the taxable property of the district sufficient to pay the entire debt as it matures   *   *   *.   The amount of the bonds to be issued and the property to be taxed are the elements which determine the burden.   These were fixed by the petition and election.   The Legislature may make assessments for local improvements ratably on the basis of property valuation (Valley Farms Co. v. Westchester, 261 U. S., 155) ; but where the amount to be raised is determined and the property to be assessed is selected as in this case, the requirement that the burden shall be so spread is not a legislative assessment   *   *   *. The act is repugnant to the due process clause of the Fourteenth Amendment."

In our opinion, the decision in Browning v. Hooper upholds, rather than destroys, the validity of bonds issued by an entire county, under the Texas statutes, for the improvement of roads of the county.

It is too plain for argument that when the statute authorizes a county to issue bonds and to levy taxes to pay them on all taxable property of the county, the Legislature has itself selected the property to be taxed.   And we think, in view of the constitutional and statutory limitation that the amount of the bonds shall not exceed one-fourth the assessed valuation of all real property in the county, and in view of the fact that the amount of the bonds is required to be fixed and stated only in the court's order for the election, the reasonable construction of the statutes is that the amount of the bonds, together with their interest rate and date of maturity, is to be determined in the exercise of delegated legislative authority by the Commissioners' Court, provided the amount of the bonds shall not exceed the bounds fixed by the Constitution and statutes.   It seems plain to us that the language of the statutes is at least as capable of this construction as of any other.   And, it is clearly our duty to prefer that construction of the statutes which relieves them from attack on grave constitutional grounds rather than to adopt a construction no more definitely required by the language used, which does bring 'their constitutionality into serious doubt. United States v. Del. & Hudson Company, 213 U. S., 366, 53 L. Ed., 836; Ark. Gas Co. v. Railroad Commission, 261 U. S., 377.

That the bonds are to be paid by means of a general tax appears to us to admit of little question.   The United States Supreme Court in the late case of Milheim v. Moffat, 262 U. S., 719, 720, quoted with approval the declaration in the early case of Olcott v. Supervisors, 16 Wall., 695, 696, that "if there be any

purpose for which taxation would seem to be legitimate it is the making and maintenance of highways. They have always been governmental affairs, and it has ever been recognized as one of the most important duties of the State to provide and care for them." The purpose of the constitutional amendment, which the statutes are designed to carry out, was heretofore stated by this Court as follows: "In a word, the purpose of this amendment plainly was to provide the means of building and maintaining not alone neighborhood, precinct or even county roads, but adequate road systems throughout the entire State, to be availed of by larger or smaller areas as might be desired, so as to afford through the exercise of a liberal taxing power, widely distributed, adequate and continuous highways through every section of the State. Such a purpose stands out, boldly, we think, in the broad and sweeping provisions of the amendment." Aransas County v. Coleman-Fulton Pasture Co., 108 Texas, 220, 191 S. W., 555. Again, we declared in Robbins v. Limestone County, 114 Texas, 356, 268 S. W., 918, "The establishment of public highways being primarily a function of government belong to the State, the right to establish them resides primarily in the Legislature, and in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the State, or to such other agency or instrumentality, general or local in its scope, as it may determine."

This tax for a beneficial governmental purpose did not lose its character as a general tax because it operated only on property within a single county. It was the province of the Legislature to determine whether taxes should be laid on all property within the State or only on property within the counties where the roads were to be improved. Mr. Justice Gray, speaking for the Court in the case of Bauman v. Ross, 167 U. S., 588, 589, 42 L. Ed., 270, settled this question in saying: "It was contended by some of the owners of lands that the public improvement proposed was not of a local character, but was for the advantage of the whole country, and should be paid for by the United States, and not by the District of Columbia, or by the owners of the lands affected by the improvement. But it is for the Legislature, and not for the judiciary, to determine whether the expense of a public improvement should be borne by the whole State, or by the district or neighborhood immediately benefited. The case, in this respect, comes within the principle upon which this court held that the Legislature of Alabama might charge the county of Mobile with the whole

cost of an extensive improvement of Mobile harbor; and, speaking by Mr. Justice Field, said: 'The objection urged is that it fastens upon one county the expense of an improvement for the benefit of the whole State. Assuming this to be so, it is not an objection which destroys its validity. When any public work is authorized, it rests with the Legislature, unless restrained by constitutional provisions, to determine in what manner the means to defray its cost shall be raised. It may apportion the burden ratably among all the counties or other particular subdivisions of the State, or lay the greater share or the whole upon that county or portion of the State specially and immediately benefited by the expenditure.' Mobile County v. Kimball, 102 U. S., 691, 703, 704, 26 L. Ed., 238." Recognizing the rule just stated, the Court, speaking through Mr. Justice Hughes, in Houck v. Little River District, 239 U. S., 265, 60 L. Ed., 266, said: "A tax is an enforced contribution for the payment of public expenses. It is laid by some rule of apportionment according to which the persons or property taxed share the public burden, and whether taxation operates upon all within the State, or upon those of a given class or locality, its essential nature is the same."

Having determined that the bonds were to be discharged by a general tax; that the Legislature itself selected the property to be taxed, to-wit: all the property of every kind in the county; that the Legislature, acting through the Commissioners' Court under the power expressly delegated to it, fixed the amount of the bonds, with their interest rate and the dates of their maturity; and that the Legislature prescribed the method of taxation by directing the levy of an ad valorem tax on all property within the county—it follows, under the uniform holdings of the Supreme Court of the United States, including its decision in Browning v. Hooper, that the bonds here involved were valid and free from any infirmity by reason of conflict with the due process clause of the Federal Constitution.

In Browning v. Hooper, the Court announced that "where a local improvement territory is selected, and the burden is spread by the Legislature or by a municipality to which the State has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the questions of benefits," citing Valley Farms Company v. Westchester, 261 U. S., 155, 67 L. Ed., 585; Hancock v. Muskogee, 250 U. S., 454, 459, 63 L. Ed., 1081; Withnell v. Construction Company, 249 U. S., 63, 69, 63 L. Ed., 479.

The opinion in Valley Farms Company v. Westchester, supra,

asserted that the doctrine was definitely settled that "in the absence of flagrant abuse or purely arbitrary action, a State may establish drainage districts and tax lands therein for local improvements, and that none of such lands may escape liability solely because they will not receive direct benefits.". This opinion rests on the authority of Houck v. Little River District, supra, wherein it was declared obvious that there was no violation of the Federal Constitution for a State Legislature to define how the burden of the cost of a public improvement should be apportioned as against property within a certain district in which the improvement was situated.

In Hancock v. Muskogee, supra, the owners of real estate in the City of Muskogee sought relief from a special assessment on their property as a contribution to the cost of a sanitary sewer. In denying such owners any relief the Court said:

"It is suggested further that the statutes and ordinances in question were wanting in due process, in that they afforded the property owner no opportunity to be heard as to the distribution of the cost of the sewer among the different properties in the district or the ascertainment of the amount of the assessment to be imposed upon the lands of plaintiffs in error. Respecting this, it is sufficient to say that as the Legislature itself has prescribed that the entire cost of a district sewer shall be apportioned against the lots in the district in proportion to area (excluding the highways), there is no occasion for a hearing with respect to the mode in which the assessment shall be apportioned, since this is resolved into a mere mathematical calculation. And it is settled by the cases above cited that whether the entire amount or a part only of the cost of a local improvement shall be imposed as a special tax upon the property benefited, and whether the tax shall be distributed upon a consideration of the particular benefit to particular lots or apportioned according to their frontage upon the streets, their values, or their area, is a matter of legislative discretion, subject, of course, to judicial relief in cases of actual abuse of power or of substantial error in executing it, neither of which is here asserted."

Withnell v. Construction Company, supra, determined that where special assessments are made in accordance with a fixed rule adopted by a legislative act, property owners had no right to any advance hearing as to the amount of the assessments or as to benefits received. The opinion in that case approves the decision in Embree v. Kansas City Road Dist., 240 U. S., 250, 251, 60 L. Ed., 624, wherein it is stated:

"The claim that the land owners are entitled to a hearing on

the question whether the benefits in the different zones will be in accord with the graduated ratings of their lands is not seriously pressed upon our attention and requires but brief notice. The ratings are not fixed in the exercise of delegated authority, but by the statute itself, which must be taken as a legislative decision that in a district lawfully constituted, in the manner before indicated, the benefits to the lands in the different zones will be in approximate accord with the ratings named. This being so, no hearing is essential to give effect to this feature of the apportionment. A legislative act of this nature can be successfully called in question only when it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power."

The United States Supreme Court declared in Branson v. Bush, 251 U. S., 189, 64 L. Ed., 215, reaffirming Spencer v. Merchant, 125 U. S., 345, 31 L. Ed., 763, that it came within the lawful taxing power of the State Legislature to select the property which would be benefited by a public improvement, and that the Legislature's determination was conclusive in the absence of any opportunity by the owner to be heard.

The case of Fallbrook Irrigation District v. Bradley, 164 U. S., 176, 177, 41 L. Ed., 369, is decisive of the proposition that the Legislature has full discretion to adopt the method of taxing all properties in a county at assessed values for the cost of a highway to be improved within the county.

We cannot sustain the view that under our interpretation of the statutes there is any power of taxation conferred on the petitioners for the election or on the qualified voters. Kelleher v. Schoene, 14 Fed. (2nd), 341, Advance Sheet page 347. It is true that the petitioners may initiate the bond issue. They may compel the Commissioners' Court to take some action on their petition. But they cannot control that Court in the exercise of its delegated authority to fix the amount of the bonds and to levy a proper tax to meet same. The statutes exact as a condition to the issuance of the bonds that they be approved by the votes of at least two-thirds the voters of the county. This condition merely imposes a wise check on the authority delegated by the Legislature to the Commissioners' Court to prevent inexpedient bond issues and tax levies. But it in nowise affects the conclusion that every constitutional right of the property owner is safeguarded when no burden or charge is placed on his property until: first, the Legislature itself has designated his property as property which should share the burden of certain road improvement, subject to an approving expression of the popu-

lar will, by a two-thirds vote; second, the Legislature, by an appropriate governmental authority specially appointed for the purpose has determined the amount to be expended on the improvement and how and when its cost shall be discharged; and, third, the Legislature has determined that a fair and equitable apportionment of the burden requires each taxpayer to con-·tribute thereto in the proportion of the assessed value of his property to the assessed value of all the property in the county. Due process requires no more than that these tests be met. They were met in this case.

We are, however, of the opinion that if the bonds were originally subject to attack on constitutional grounds, they have since been validated by Act of the Legislature of Texas. The Governor convened the Legislature in special session for the purpose, among others, of passing "necessary and proper legislation that will validate and legalize State, County, Commissioners' Precinct and Special Road District bonds or securities whose validity has been brought in question by the decision of any State or Federal Court, or otherwise. And to cure any defects in the issuance of said bonds or securities, or to provide by proper legislation to make said bonds or securities binding and valid debts and obligations of the authority issuing the same."

The Governor, on October 14, 1926, approved a law, which became effective on that date, whereby the election at which the bonds here involved were voted, the notice of the election, all orders of the Commissioners' Court, the taxes levied to pay the bonds, and all other proceedings pertaining to the bonds were each and all expressly ratified and validated.

We have already shown that under principles repeatedly declared by the Supreme Court of the United States the Legislature of Texas might in the first instance have made any reasonable selection of the property to be taxed for the improvement of the public roads in Tom Green County, and could have levied ad valorem taxes on such property to pay the cost of such improvement. There being no constitutional provision to the contrary, whatever the Legislature might originally have lawfully authorized in respect to these matters it could subsequently confirm.

The rule is thus tersely put by Mr. Justice Gaines in Nolan County v. State, 83 Texas, 182, 17 S. W., 823, viz: "Where a contract which a municipal corporation has attempted to create is invalid merely for the want of legislative authority to create it, it can be made valid by a subsequent law."

The United States Supreme Court, through Mr. Justice

McKenna, in Charlotte Harbor & N. R. Co. v. Welles, 260 U. S. 11, 67 L. Ed., 102, says: "The general and established proposition is that what a legislature could have authorized it can ratify, if it can authorize at the time of ratification," citing numerous cases. To the same effect is Kansas City Southern Ry. Co. v. Road District, 266 U. S., 379, 69 L. Ed., 355.

Relators have shown themselves entitled to the writ of mandamus. It will be awarded as prayed for.