## COWAN et al. v. CLAY COUNTY BOARD OF EDUCATION et al.

### No. 12530.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 14, 1931.

Rehearing Denied April 25, 1931.

Taylor-Muse & Taylor, of Wichita Falls, for appellants.

W. J. Glasgow, of Henrietta, for appellees.

CONNER, C. J.

This suit was instituted September 9, 1930, by R. T. Gowan, R. S. Gowan, L. B. Hapgood, F. D. McNeill, Ebb Sweazea, and Mrs. E. H. Carter, all residents of Clay county, and K. N. Hapgood, a resident of Dallas county, against the Clay county board of trustees, alleged to be a body politic with authority to sue and be sued to set aside certain orders of said county board, purporting to abolish the Gowan common school district No. 17 of Clay county and distribute its territory among adjoining school districts. It was alleged that:

"On the second day of March, 1929, at a meeting of the Clay County School Board, an order was passed abolishing Gowan District No. 17, thereafter at a meeting on April 6, 1929, said School Board transferred and annexed the territory of Gowan School District No. 17 to the following adjoining district, to wit:

"New London Common School District, No. 25, 1770 acres, Secret Springs Common School District No. 20, 3079 acres, Friendship Common School District, No. 14, 1679 acres, Bellevue Independent School District 3984 acres."

The orders of the county board referred to appear in the agreed statement of facts without objection as to form, but it was alleged that such action was taken without petition or election therefor on the part of the qualified taxpaying voters of any of the districts concerned, and without the consent or order of the Gowan common school district.

The case was tried upon the agreed statement of facts by the court without a jury and resulted in a judgment which denies the plaintiffs all relief, and the case is now before us for review.

There are no findings of fact and conclusions of law in the familiar form, but the judgment recites that:

"The court finds that the County Board of Trustees did not pursue the course provided by Statutes then in effect in abolishing said Gowan School District and transferring said territory to said other school districts.

"But the court finds further that the said action of the County Board of Trustees of Clay County, Texas, has been in all things

ratified and validated by a general act of the Legislature of the State of Texas, and that the said Bellevue Independent School District, the New London Common School District No. 25, the said Secret Springs Common School District No. 20, and the said Friendship Common School District No. 14, as changed created and affected by the said action of the said County Board of Trustees of Clay County, Texas, and as described in said orders of said Clay County Board of Trustees are each legal, valid and subsisting school districts under the laws of the State of Texas."

It is admitted in behalf of the appellee school board that the several orders and proceedings made and had by it were at the time wholly without authority. It hence is unnecessary to examine or discuss the legislative provisions necessary to the validity of the action taken by the board. The only question presented for our determination by the briefs of counsel is whether the trial court was correct in holding that the unauthorized acts of the county board of trustees was validated by a subsequent act of the Legislature.

The act relied upon is to be found on pages 117 and 118 of the pamphlet laws of the 41st Legislature at the 4th and 5th Called Sessions (chapter 5 of 5th Called Sess. [see Vernon's Ann. Civ. St. art. 2742j]). The act became effective 90 days after the Legislature adjourned, which was on March 20, 1930. In the first section of the act, provision is made for the formation of a common school district into an independent school district. Sections 2 and 3 of the act (the portion of the act here relied upon) read as follows:

"All school districts, including common school districts, * * * consolidated independent school districts, county line school districts, consolidated county line school districts, and rural high school districts, whether created by general or special law in this State, heretofore laid out and established or attempted to be established by the proper officers of any county, or by the Legislature of the State of Texas, including such districts as have been created under the provisions of Section 5, Chapter 84, of the Acts of the First Called Session of the 40th Legislature of the State of Texas, 1927, created or attempted to be created by any county board of trustees as therein provided, are hereby in all respects validated as though they had been duly and legally established in the first instance. All acts of the Board or Boards of Trustees in such districts ordering elections, declaring the result of such elections, and levying the tax therefor, and all bonds issued and now outstanding, are hereby in all things validated. The fact that by inadvertence or oversight any act of the officers of any county in the creation of any district was omitted shall in no wise invalidate such district, and the fact that by inadvertence or oversight any act was omitted by any Board of Trustees of a county in creating such district, or in any Board of Trustees of such District in ordering an election or elections, or in declaring the result thereof, or in levying the taxes for such district, or in the issuance of the bonds of any such district was omitted shall in no wise invalidate such proceedings or the bonds so issued by any such district.

"Sec. 3. The fact that there is at present no method provided for the incorporation of independent school districts in a territory having a population of less than seven hundred (700) inhabitants, and there exists an urgent need for more effective control for the development and control of public free schools and the creation of independent school districts in territory having less than seven hundred (700) inhabitants; and the fact that the legal existence of various school districts may be questioned, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and that this Act take effect and be in force from and after its passage, and said rule is hereby suspended, and it is so enacted."

The terms of section 2 are very broad, including as they do all classes of our school districts, and certainly manifest the purpose of the Legislature to cure all organization infirmatives of school districts theretofore established. The purpose to so do is further shown by section 3, the emergency clause, as well as by the caption of the act, which we think unnecessary to quote. If, therefore, the validating act is sustainable as a lawful exercise of the legislative power and effective as against the proceedings questioned, it must follow that all conditions, omissions, irregularities, and unauthorized acts or proceedings on the part of the county board of trustees, of which complaint is now made, furnish no judicial cause of complaint.

Appellants, under appropriate assignments and propositions of error, insist that the judgment of the trial court in upholding the action of the board is erroneous for the reason that the acts of the board are void and that "no such act or ratification or validation was in existence" at the time. The contention being that the Legislature was without power to validate an antecedent void act and further for the reason that the acts of the board amounted in law to actual fraud, which was beyond the powers of the Legislature to cure.

In answer to the contention last made, we think it must be said that the evidence wholly fails to show any such fraud, actual or constructive, on the part of the county board of trustees. We apprehend that no definition

of fraud can be given that will fit all cases. Webster defines "fraud" as: "Quality of being deceitful; deception deliberately practiced with a view to gaining an unlawful or unfair advantage; deceitfulness; trickery." And in Crosby v. Wells, 73 N. J. Law, 570, 67 A. 295, 302, it is said that: "Fraud is complex, involving a mental state, as well as an open act. The mental state, in turn, has, usually at least, three elements: Knowledge, intent, and design." Numerous other definitions are given in 2 Words and Phrases, Second Series, 638, under the title of "Fraud."

As shown by the statement of facts, the county board of trustees was composed of A. C. Campbell, chairman, Lee Bryan, J. M. Anderson, J. W. Dixon, and T. J. Owens. The statement further indicates that the action was taken in response to a petition addressed to the county superintendent and county board of education, dated March, 1923, and signed by the president and secretary of the board of trustees of Bellevue independent school district. In this petition it is recited that:

"This district (the Bellevue Independent School District) has for a number of years been schooling the children from district No. 17 at a loss in that the average cost per scholastic in the Bellevue District is $50.00 per year while transfers from No. 17 only bring in from $18.00 to $27.00 a year per scholastic (the grade determines the tuition rate). The local taxpayers are continually complaining to this board about the above mentioned condition.

"Make your actions effective immediately and notify this board of your actions, and oblige."

The record further discloses that the appellants in this case first appealed to the state superintendent of public instruction, and from him to the state board of education, both authorities denying appellants the relief later sought in the district court, which rendered the judgment from which this appeal has been prosecuted.

In the case of Tom Green County v. Moody, Atty. Gen., 116 Tex. 299, 289 S. W. 381, 385, our Supreme Court had occasion to consider the effect of a legislative act validating the proceedings which terminated in the issuance of certain of Tom Green county's road bonds. We quote the following from the opinion which was written by Mr. Justice Greenwood:

"The Governor, on October 14, 1926, approved a law, which became effective on that date, whereby the election at which the bonds here involved were voted, the notice of the election, all orders of the commissioners' court, the taxes levied to pay the bonds, and all other proceedings pertaining to the bonds were each and all expressly ratified and validated.

"We have already shown that under principles repeatedly declared by the Supreme Court of the United States the Legislature of Texas might in the first instance have made any reasonable selection of the property to be taxed for the improvement of the public roads in Tom Green county, and could have levied ad valorem taxes on such property to pay the cost of such improvement. There being no constitutional provision to the contrary, whatever the Legislature might originally have lawfully authorized in respect to these matters it could subsequently confirm. The rule is thus tersely put by Mr. Justice Gaines in Nolan County v. State, 83 Tex. 182, 17 S. W. 823, viz.:

" 'Where a contract which a municipal corporation has attempted to create is invalid merely for want of legislative authority to create it, it can be made valid by a subsequent law.'

"The United States Supreme Court, through Mr. Justice McKenna, in Charlotte Harbor & N. R. Co. v. Welles, 260 U. S. 11, 43 S. Ct. 3, 4, 67 L. Ed. 102, says:

" 'The general and established proposition is that what the Legislature could have authorized it can ratify, if it can authorize at the time of ratification'—citing numerous cases.

"To the same effect is Kansas City Southern Ry. Co. v. Road District, 266 U. S. 379, 45 S. Ct. 136, 69 L. Ed. 335."

In the later case of Anderson County Road District No. 8 v. Pollard, 116 Tex. 547, 296 S. W. 1062, 1065, the Supreme Court, in an opinion written by Chief Justice Cureton, said: "The general and established rule is, what the Legislature could have authorized in the first instance it can ratify, if at the time of ratification it has the initial authority to authorize. Charlotte Harbor & Northern Ry. Co. v. Welles, 260 U. S. 8, 43 S. Ct. 3, 67 L. Ed. 100; Tom Green County v. Moody [116 Tex. 299], 289 S. W. 381; Nolan County v. State, 83 Tex. 182, 17 S. W. 823; and other authorities supra."

In Ogburn Orchard Co. v. Bozeman, 194 S. W. 1155, the Texarkana Court of Civil Appeals held that a validating act of the Legislature in 1913 had the effect of legalizing a void order of the commissioners' court in transferring 1,000 acres of land from one school district to another. See also U. S. v. Heinszen, 206 U. S. 387, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688.

We find no want of power in the Legislature to enact the curative legislation under consideration in this case.

In the case of County Board of School Trustees of Young Co. v. Bullock Common School District No. 12, 37 S.W.(2d) 829, this court had occasion to consider the constitutionality of House Bill No. 25, chapter 47, and a validating act of House Bill No. 220,

chapter 109, of the First Called Session of the 41st Legislature (see Vernon's Ann. Civ. St. arts. 2742e, 2742f); both acts being kindred to the one now under consideration. We held that the legislation was valid as against the constitutional objections urged thereto. In the present case no constitutional objection is urged. Section 1 of article 7 of our Constitution, provides that: Public Schools to be Established.—"A general diffusion of knowledge, being essential to the preservation of the liberties and rights of the people, it shall be the duty of the legislature of the state to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

Section 3 of the same article provides, in part, as follows: "And the legislature may also provide for the formation of school districts by general or special law without the local notice required in other cases of special legislation."

It is to be noted that these sections of the Constitution do not prescribe the procedure to be observed by the Legislature in establishing the system of our public free schools, nor do the sections contain any limitation of the legislative power as to time or circumstance when the power is to be exercised. Nor do we find in any other part of our Constitution any clause that infringes upon or limits the wide powers given by the sections quoted. It must therefore be held, we think, that the Legislature, at the time of the enactment of the validating act under consideration, had full power to make changes in districts or to constitute them in the manner and form attempted by the county board of school trustees of Clay county. This being true, as we think, under the authorities above cited, the trial court committed no error in the rendition of the judgment under consideration.

Appellants make a further contention that the validating act should not be held to operate for the reason that it became effective after the beginning of this suit and during its pendency, but inasmuch as the act contains no reservation exempting pending actions from its operation, we think this contention must be overruled without extended discussion.

There is another view of the case, not presented by the assignments of error, which leads to a denial of a right of recovery on the part of appellants. In 35 Cyc. p. 833, it is said: "The power to organize, establish, or lay off new school districts, or to divide, change the boundaries, or otherwise alter existing districts is vested primarily in the legislature, which may act without the assent of the inhabitants of the affected territory," citing, to support the proposition stated in the text, Attorney Gen. v. Lowrey, 131 Mich. 639, 92 N. W. 289; School Dist. No. 17 of Garfield County v. Zediker, 4 Okl. 599, 47 P. 482; Kuhn v. Wellsburg Board of Education, 4 W. Va. 499, to which may be added State v. Norwood, by the Galveston Court of Civil Appeals, 24 Tex. Civ. App. 24, 57 S. W. 875.

In chapter 12, title 49, Rev. Civ. Statutes (article 2584 et seq.), the county board of education is given the general management and control of public schools in their county, and the article in the title confers power to divide and subdivide districts, etc., but in article 2711 of chapter 12 it is said: "Said board shall consolidate schools, wherever in its judgment, it is practicable, and arrange if possible, for the transportation of pupils to and from such consolidated schools. Before consolidating two or more separate schools located in separate school districts said board shall call a meeting of the board of trustees of such school districts to meet with the county board for the purpose of giving such boards of local trustees an opportunity of being heard as to the advisability of making such consolidations."

It is thus seen that the trustees of the school district to be affected by the consolidation are entitled to have notice and be given an opportunity to be heard as to the advisability of making the proposed consolidations. In the case of Henderson v. Miller, 286 S. W. 501, this court held that such trustees were charged in a general way with the management of the affairs of the districts and the protection of their just interests, and article 2683 of the Statutes provides: "The county school trustees of each county shall constitute a body corporate, by the name of the county school trustees of —— County, State of Texas, and in that name may acquire and hold real and personal property, sue and be sued," etc.

In the case now before the court, the trustees of the Gowan common school district are not complaining and have not been made parties, and the appellants in their petition only allege, in substance, that they are taxpayers and residents of the Gowan common school district. It is nowhere alleged that they have children and are patrons of the school in that district, nor is it alleged that the district has a bonded indebtedness that will be affected or that by the consolidation of the district with other districts their taxes will be increased. So that, as it seems to us, they wholly fail to show any legal cause of complaint.

However, regardless of the suggestion last made, we conclude that for the reasons heretofore stated, the judgment of the trial court must be affirmed.